OPINION
Defendant-appellant, John Butler, appeals from a judgment of the Franklin County Court of Common Pleas whereby appellant was convicted of one count of aggravated robbery and one count of aggravated murder with specification, pursuant to a jury trial.
On January 1, 1996, Cheryl Davis was found dead in her Columbus apartment. The Columbus Division of Police determined that Davis was murdered on either December 29, or December 30, 1995. After a series of investigations, no arrests were made. Eventually, in January 1997, the case was assigned to Detective Sharon Ceckitti of the cold case unit. Detective Ceckitti reopened the investigation and interviewed potential witnesses, including appellant. As a result of the investigation, Detective Ceckitti filed a warrant for appellant's arrest for the murder of Davis.
Appellant was tried and convicted on one count of aggravated robbery and one count of aggravated murder with specification in the death of Davis. The trial court sentenced appellant to life imprisonment without parole eligibility until serving thirty years of imprisonment on the aggravated murder charge with specification. As to the charge of aggravated robbery, the trial court sentenced appellant to prison for ten to twenty-five years. The trial court ordered the sentences to be served consecutively. The trial court further assessed a fine of $25,000, which was waived due to appellant being indigent and incarcerated. Finally, the trial court found that appellant is a dangerous offender and is not eligible for probation. Other relevant facts in this case are discussed in the opinion below.
Appellant appeals, raising five assignments of error:
 THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE EVIDENCE AGAINST APPELLANT DID NOT ESTABLISH HIS GUILT BEYOND A REASONABLE DOUBT, BUT RATHER ESTABLISHED HIS MERE PRESENCE AT THE SCENE OF THE CRIME.
 THE JURY'S VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SUSTAIN ITS VERDICT AS A MATTER OF LAW, BECAUSE NO RATIONAL TRIER OF FACT COULD HAVE FOUND THE ESSENTIAL ELEMENTS OF MURDER BEYOND A REASONABLE DOUBT WITHOUT IMPERMISSIBLY STACKING AN INFERENCE UPON OTHER, UNSUPPORTED INFERENCES.
 THE TRIAL COURT ERRED IN ADMITTING THE INADMISSIBLE HEARSAY TESTIMONY OF JIM CORNWELL FOLLOWING HIS IMPEACHMENT BY DEFENSE COUNSEL, WHERE THERE WAS NO CHARGE OF RECENT FABRICATION OR IMPROPER MOTIVE OR INFLUENCE.
 THE TRIAL COURT ERRED IN ADMITTING APPELLANT'S STATEMENTS TO HIS WIFE, AS THEY WERE OBTAINED IN VIOLATION OF HIS RIGHTS AS SET FORTH IN MIRANDA V. ARIZONA, THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 THE TRIAL COURT ERRED IN ADMITTING GRUESOME, REPETITIVE PHOTOGRAPHS OF CHERYL DAVIS'S BODY, THEREBY UNFAIRLY INFLUENCING THE JURY AND DEPRIVING HIM OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
We begin with appellant's fourth assignment of error, which concerns statements appellant made during a custodial interrogation by Detective Ceckitti. After appellant was arrested, Detective Ceckitti interrogated him about the death of Davis. Throughout the custodial interrogation, appellant repeatedly expressed a desire to see a lawyer. Despite appellant's requests, the detective continued to question him. Ultimately, appellant told the detective that, on December 29, 1995, he went to the apartment of Davis and found her dead body. According to appellant, Davis' ex-fiance, Matt Stuller, was at the apartment. Appellant further told the detective that his shoes and shirt became stained with blood while he was at the apartment and also told Detective Ceckitti that he removed an engagement ring from the victim's finger.
After appellant made these statements, Detective Ceckitti called appellant's wife. Appellant proceeded to talk to his wife on the telephone in the presence of Detective Ceckitti, and told his wife that he went to Davis' apartment and found Stuller at the apartment "freaking" because she was dead. Appellant also told her that he helped Stuller "cover the whole situation up," and that he stained his shirt and shoes with blood while at the apartment.
Prior to trial, appellant sought a motion to suppress the above statements that he made to Detective Ceckitti and his wife on the grounds that they were obtained against his constitutional right to deal with police only through an attorney. The trial court granted the motion to suppress by indicating that "[a]ll statements made by [appellant] from page 30 line 5 [in the transcript of the April 2, 1998 custodial interrogation] to the end are suppressed as a violation of his constitutional rights." Thus, the trial court's ruling covered statements appellant made to both Detective Ceckitti and his wife, because both statements were contained in the portion of the transcript that the trial court suppressed. However, for reasons not borne out in the record, the trial court allowed the statements appellant made to his wife to be admitted at trial. Appellant did not object at trial to the admission of these statements but, nonetheless, asserts in his appeal that the trial court erred in admitting into evidence the statements he made to his wife. We agree.
An accused may not be subjected to custodial interrogation without assistance of counsel when the accused has expressed a desire to deal with police only through counsel. Edwards v. Arizona (1981),451 U.S. 477, 484-85; Miranda v. Arizona (1966), 384 U.S. 436, 479. A trial court may not admit into evidence an accused's incriminating statements made in response to police questioning when the custodial interrogation occurs against an accused's desire for counsel. Edwards. Custodial interrogation occurs when an accused is being questioned while he or she is under arrest or otherwise not free to leave.Berkemer v. McCarty (1984), 468 U.S. 420, 442.
In this case, appellant was placed under arrest and brought to police headquarters. While at police headquarters, Detective Ceckitti questioned appellant about the murder of Davis, thereby subjecting him to custodial interrogation. During the initial stages of questioning, appellant expressed a desire to have the assistance of an attorney. Under Edwards, Detective Ceckitti was to end the custodial interrogation when appellant expressed the desire for counsel. However, the detective continued to subject appellant to hours of questioning. At one point during the questioning, Detective Ceckitti called appellant's wife. The detective set the tone of the conversation to be one where appellant would have to further explain his involvement in the murder of Davis. Detective Ceckitti told appellant's wife:
 [Appellant] and I talked for a couple of hours, and he has probably been the bravest person he has ever been in his whole life. * * *
* * * I think we got to the bottom of a lot of things * * *.
The detective then let appellant talk to his wife while she listened and recorded his conversation. Appellant proceeded to make the above-noted incriminating statements to his wife. Immediately after appellant ended his conversation with his wife, Detective Ceckitti continued to question appellant about the murder of Davis. At the conclusion of the questioning, appellant was taken to jail.
Based on the above, we conclude that appellant's incriminating statements to his wife were part of and obtained during improper custodial interrogation against his constitutional right to deal with police only through an attorney. As such, the statements are inadmissible at trial.
As noted above, the record is silent as to why the trial court allowed appellant's recorded telephone statements into evidence after initially sustaining appellant's motion to suppress the statements. It is equally puzzling why appellant never objected on the record to these statements being admitted. As such, we must confine our review of this assignment of error to the plain error doctrine. See State v. Moreland (1990), 50 Ohio St.3d 58,62. Under the plain error doctrine, we may address plain errors or defects affecting substantial rights, although they were not brought to the attention of the trial court. Crim.R. 52(B). We cannot find plain error unless we find that, but for the error, the outcome of the trial would clearly have been different. Moreland, at 62, citing State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus; see, also, State v.Hill (1995), 73 Ohio St.3d 433, 438.
Here, appellant's confessions played an integral role in this case. Appellant's confessions place him at the scene of the crime and clearly implicate his guilt. The other evidence linking appellant to the murder is mostly circumstantial and presents a close case. Thus, the statements overshadowed all the evidence in this case and affected the outcome of the trial such that we may notice the plain error of admitting the statements in violation of appellant's constitutional rights. Therefore, we conclude that the trial court was correct in originally sustaining appellant's motion to suppress, but was in error when it subsequently admitted into evidence the statements appellant made to his wife. As such, we sustain appellant's fourth assignment of error.
Next, we address appellant's second assignment of error. In his second assignment of error, appellant asserts that his convictions are based on insufficient evidence. We disagree. In so concluding, we note that our purpose in addressing appellant's second assignment of error is to emphasize that our decision does not amount to an acquittal of appellant.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,386. When reviewing whether a verdict is supported by a sufficiency of the evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier-of-fact could have found essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact. Jenks, at 273.
In this case, appellant was convicted of aggravated robbery in violation of R.C. 2911.01, which makes it unlawful for a person to inflict or attempt to inflict serious physical harm on another while committing a theft offense. As well, appellant was convicted of aggravated murder with specification in violation of R.C. 2903.01, which makes it unlawful for a person to purposely cause the death of another while committing or attempting to commit kidnapping, aggravated robbery or aggravated burglary.
Because of our disposition of appellant's fourth assignment of error, and for purposes of clarity, we will not consider appellant's statements to his wife as part of our analysis of appellant's insufficiency of evidence claim.
Initially, we find that a jury is able to conclude from the nature of the victim's death that she was purposely killed. Davis was shoved through a cabinet in her apartment and ultimately killed by two severe blows to her head. The blows fractured her skull and bruised her brain. Davis had cuts on her face and she suffered injuries to her nose and neck. Having so concluded, we note that the record supports a finding that appellant committed these acts that killed Davis.
Davis was found dead in her living room wearing nothing but a pair of long underwear and a long coat. Her mother, father and former roommate testified that Davis would probably not have been dressed in such a way unless she had unexpected company. Davis' mother, father and former roommate further testified that Davis ordinarily would not let any unexpected visitor in unless she knew them well. According to Davis' former roommate, in the past, appellant visited Davis unexpectedly, and Davis would usually invite him in the house. Thus, a jury is able to use the above evidence to support a conclusion that Davis was murdered by appellant, an individual with whom Davis knew quite well.
As well, the victim's hands contained defensive wounds, which indicate that she and her attacker engaged in a struggle. Such a struggle is further demonstrated by the victim's blood being splattered around her apartment, and the many glass and ceramic objects around her apartment being broken. Because the record establishes that appellant had scratches on his body shortly after Davis was murdered, a jury is able to use the above evidence to confirm a finding that appellant was the individual who struggled with Davis and ultimately killed her.
Moreover, shortly after Davis was murdered, appellant was in possession of an engagement ring given to Davis by her ex-fiance, Matt Stuller. Even though Davis and Matt Stuller ended the engagement, Davis had kept the ring. Appellant ultimately sold the ring to his former employer, Sebastian Reyna. Such evidence further links appellant to the murder of Davis and also supports appellant's conviction for aggravated robbery.
Furthermore, the record establishes appellant's anger toward Davis. Davis' former roommate, Michelle Lowther, testified that two or three months prior to Davis' death, appellant told Lowther that he was mad at Davis because she was "using" his friend Matt Stuller. Lowther actually described appellant as being furious at Davis. Similarly, appellant's former co- worker, Jim Cornwell, who started working with appellant in October 1995, testified that, prior to Davis' death, appellant told him that he did not like the way Davis was treating Stuller. Cornwell also testified that appellant hated Davis and that he wished she were dead. We note that, during the trial, appellant attacked the credibility of Cornwell's testimony. However, credibility issues are for the trier-of-fact to be second-guessed only in the most exceptional case. In re Jerome Fisher (June 25, 1998), Franklin App. No. 97APF10-1356, unreported. As well, we note that such credibility issues are not considered in a sufficiency of the evidence analysis. See Thompkins, at 387; State v. Martin (1983),20 Ohio App.3d 172, 175 (indicating that credibility issues are generally not to be considered in determining whether a conviction is based on sufficient evidence).
Finally, shortly after Davis was murdered, appellant made suspicious comments implicating his guilt. For example, appellant talked to his friend John Mitchell about the murder and asked him how long fingerprints last and how long a murder investigation lasts. According to Mitchell, appellant gave three different explanations as to what appellant was doing during the time that Davis was murdered. Similarly, Detective McCoskey, an investigator in this case, testified that appellant asked him how long fingerprints last. Detective McCoskey also testified that he confronted appellant about reports he received regarding appellant having scratches on his body around the time of the victim's murder. The information McCoskey obtained indicated that appellant received the scratches after having been involved in a fight at the gym. Indeed, appellant told his former employer, Sebastian Reyna, that he received the scratches on his body from a fight at the gym. However, appellant told McCoskey that he never was involved in a fight at the gym and that he never had any scratches on his body around the time of the victim's murder.
Therefore, examining all the above evidence in a light most favorable to the prosecution, we conclude that sufficient evidence exists to support appellant's convictions for aggravated robbery and aggravated murder with specification. Thus, we overrule appellant's second assignment of error.
In summary, we overrule appellant's second assignment of error and sustain appellant's fourth assignment of error. Because of our disposition of appellant's fourth assignment of error, we render appellant's first, third and fifth assignments of error moot. App.R. 12(A)(1)(c). The judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.
BOWMAN and KLINE, JJ., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.